UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PAUL L OTTWELL; aka OTTWELL, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. G-09-150 |
| | § | |
| RICK THALER; aka QUARTERMAN, | § | |
| | § | |
| Respondent. | § | |

**<u>MEMORANDUM AND ORDER</u>**

The petitioner, Paul Ottwell, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging two (2) disciplinary cases that he received in October 2008, for attempting to contact Tara Tisdale, a third party, in an attempt to contact his two children, who were younger than seventeen years of age at the time of the offense[1] for which Ottwell is serving his sentence. The respondent, the Director of the Texas Department of Criminal Justice-Institutions Division, has moved for summary judgment. (Doc. # 13). Ottwell has filed a response. Based on careful consideration of the pleadings, the summary judgment motion and response, the record and the applicable law, this court will deny respondent's motion for summary judgment. The reasons for this ruling are set out below.

The record reflects that Ottwell was convicted of injury to a child in May 2006, and sentenced to fifteen years imprisonment. Ottwell, who remains incarcerated in the Wayne Scott Unit in Angleton, Texas, does not challenge his underlying conviction here, but seeks reversal of the two disciplinary cases at issues in this case, and to have his good time, security level and custody level restored.

---

[1] Injury to a child.

On October 3, 2008, Ottwell was charged in disciplinary case # 20090031881 with attempting to contact Tara Tisdale, a thirty party, in an attempt to contact his children, who were younger than seventeen years of age at the time of the offense for which Ottwell is serving his sentence, by letter without authorization.  At the disciplinary hearing on October 7, 2008, Ottwell was found guilty of the charge.  Punishment for the offense included twenty (20) days of cell restriction; a reduction in time-earning class status from S-3 to L-1; twenty (20) days loss of commissary and recreation privileges; and a loss of 90 days of good time credit.  Ottwell challenged the findings of the disciplinary committee by filing a Step 1 and Step 2 grievance, but his appeal was unsuccessful.

On October 8, 2008, Ottwell was charged with an additional disciplinary case - case # 2009037705 - for a second attempt to contact Tara Tisdale, a third party, in an attempt to contact his children, who were younger than seventeen years of age at the time of the offense for which Ottwell is serving his sentence.  At the disciplinary hearing on October 9, 2008, Ottwell was found guilty of the charge.  Punishment for the second offense included thirty (30) days of cell restriction; a reduction in time-earning class status from L-1 to L-2; thirty (30) days loss of commissary and recreation privileges; and a loss of 180 days of good time credit.  Ottwell challenged the findings of the disciplinary committee by filing a Step 1 and Step 2 grievance, but again his appeal was unsuccessful.

Ottwell now seeks a federal writ of habeas corpus to challenge his two disciplinary convictions.  Ottwell claims that his due process rights were violated in both disciplinary cases because TDCJ officials ignored documentation that established his actual innocence of the disciplinary convictions.  (Doc. # 1, p. 7).  The respondent moves for summary judgment on the grounds that Ottwell is not entitled to federal habeas relief because he has failed to show that he

was punished without due process and his claim of actual innocence is without merit.   The parties' contentions are discussed below under the standard of review that governs disciplinary proceedings in the prison context.

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   FED. R. CIV. P. 56(c).   The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portion of the record demonstrating the absence of a genuine issue for trial.   *Duckett v. City of Cedar Park, Tex.,* 950 F.2d 272, 276 (5th Cir. 1992).   Thereafter, the "burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."   *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).   The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.,* 37 F.3d 224, 227 (5th Cir. 1994).

State prisoners seeking federal court review of a conviction pursuant to 28 U.S.C. §2254 must assert a violation of a federal constitutional right.   *Lawrence v. Lensing,* 42 F.3d 255, 258 (5th Cir. 1994); *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993). In the context of disciplinary proceedings, a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.   *See Wolf v. McDonnell*, 418 U.S. 539, 557 (1974).   However, prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest.   *See Sandin v. Conner*, 515 U.S. 472 (1995).   Liberty interests emanate from either the Due Process Clause or from state law.   *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).   A convicted prisoner

does not have a constitutional right to conditional release before the expiration of a valid sentence. *See Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). Likewise, the Constitution does not guarantee an inmate good-time credit for satisfactory behavior while in prison. *Wolff*, 418 U.S. at 537; *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Absent a showing that his disciplinary conviction has implicated a constitutionally protected interest, a prisoner's due process claim depends on the existence of an interest created by state law.

The Supreme Court has decided that only those state-created substantive interests which "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Sandin*, 515 U.S. at 487; *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995), *cert. denied*, 516 U.S. 1059 (1996). In Texas, it is well established that only those inmates who are eligible for mandatory supervision have a constitutional expectancy of early release under the Texas mandatory supervision scheme and a protected liberty interest in the good-time credits that they have earned. *Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000); *see also Teague v. Quarterman*, 482 F.3d 769 (5th Cir. 2007). The petitioner's claims are addressed below in connection with the sanctions imposed in order to determine whether the punishment implicates the Due Process Clause.

A temporary loss of commissary and recreation privileges and a brief period of cell confinement do not pose atypical or significant hardships beyond the ordinary incidents of prison life. They are merely minimal and temporary changes in conditions of confinement and therefore do not implicate the protections afforded by the Due Process Clause. *See Madison,* 104 F.3d at 767-68. A claim for a reduction in time-earning class status also fails to qualify for federal habeas relief, as the subsequent possible loss of "the mere opportunity to earn good-time

credits" does not constitute a constitutionally cognizable liberty interest sufficient to "trigger the protection of the Due Process Clause." *Luken v. Scott,* 71 F.3d 192, 193 (1995), *cert. denied*, 517 U.S. 1196 (1996).  The possibility that a reduction in a petitioner's time-earning class status would affect his ultimate release date from prison "is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id.*  "These are penalties which do not represent the type of atypical, significant deprivation in which a state might create a liberty interest." *Madison*, 104 F.3d at 767-68.   Because the above-referenced sanctions do not implicate a protected liberty interest, Jensen is not entitled to habeas corpus relief from these forms of punishment.

A loss of good-time days, however, which may be used to determine a prisoner's eligibility for early release from prison, does constitute a potential challenge to the fact and duration of confinement and is properly considered a habeas corpus attack.  *See* TEX.CODE. CRIM.P.ANN.art. 42.18 §8 (Vernon 1996); *Cook v. Texas Dept. of Criminal Justice Transitional Planning Dept.* 37 F.3d 166, 168 (5th Cir. 1994). When a state creates a right to time-credit for good conduct and recognizes that its revocation is an authorized sanction for misconduct, "a prisoner's interest therein is embraced within the Fourteenth Amendment 'liberty' concerns so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that this state-created right is not arbitrarily abrogated." *Madison,* 104 F.3d at 768 (citing *Wolff*, 418 U.S. at 557).  It appears that Ottwell is eligible for mandatory supervision and, therefore,  has a protected liberty interest in his previously earned good-time credits. *See Teague*, 482 F.3d at 775-76.  To the extent Ottwell has a liberty interest in good-time credit accrued toward his potential early release on mandatory supervision, the revocation of those credits must comply with the minimum amount of procedural protection

required under the circumstances. *See Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 454 (1985); *Henson v. United States Bureau of Prisons,* 213 F.3d 897, 898 (5th Cir. 2000).

It is a well-settled principle of law that prison disciplinary proceedings do not form part of a criminal prosecution and, therefore, "the full panoply of rights due a defendant in such proceedings" does not apply. *Wolff,* 418 U.S. at 564-65. In *Wolff,* the Supreme Court set out the minimum standards for due process in disciplinary cases which result in the loss of good-time credits. They include: (1) advanced written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence when the presentation is not unduly hazardous to institutional safety and correctional goals; and, (3) a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action. *Id.,* at 563-567. Ottwell does not complain that he received insufficient notice of the charges or that he was denied a written statement of the reason for his conviction; nor, after having reviewed the written records associated with the two disciplinary cases and the disciplinary hearing audiotapes which were submitted by respondent, does the Court find evidence to the contrary. The disciplinary hearing records confirm that Ottwell was afforded ample notice of the charges against him, along with an opportunity to appear and present a defense at the hearing. Ottwell has failed to demonstrate that he was denied the minimum level of procedural due process as dictated by the Supreme Court in *Wolff*, 418 U.S. at 563-67.

Ottwell contends that he was wrongly convicted of attempting to communicate with his children via a third party. Ottwell does not contest the charge that he mailed letters to his two children via a caseworker of the Department of Family and Protective Services ("the Department"). Rather, he contends that he was acting pursuant to instructions dictated by the

state court[2] when it conducted hearings regarding the safety of the home environment of his children in 2008.  (At that time, the children were living with their mother and Christopher Trevino, presumably their stepfather.)  The court instructions pertained to the procedure Ottwell was ordered to follow if he wanted to write his children letters from prison.  In his supplemental memorandum with attachments (Doc. # 2), Ottwell included:

1.   The Step 1 and Step 2 appeals for the two disciplinary cases (Exhibits A-D);

2.   the Temporary Order Following Adversary Hearing, entered May 1, 2008, by the 364th District Court (Exhibit E);

3.   the Status Hearing Order, entered June 5, 2008, by the 364th District Court (Exhibit F);

4.   the Family Service Plan regarding substitute care for his children, issued by the Department on May 13, 2008 (Exhibit G);

5.   his letter to the TDCJ Director's Review Committee, dated October 17, 2008 (Exhibit H);

6.   decision form of the Director's Review Committee, dated November 12, 2008 (Exhibit I);

7.   the Director's Review Committee decision regarding his letter, dated October 22, 2008 (Exhibit J); and,

8   a letter from Bethany Bingham of the Department, stating "Due to your conviction of Injury to a Child, it will be continue [sic] to be prohibited fo you to contact your children directly or through the Department," dated December 15, 2008 (Exhibit J).

Ottwell maintains that he sent a letter to each of his two children via the caseworker, pursuant to the instruction of the district court, and has provided evidence in support of his contention, to wit:

• The May 1, 2008, Temporary Order Following Adversary Hearing (Exhibit E, p. 8) specifically states: "Paul Lornes Ottwell is ORDERED, pursuant to Texas

---

[2] The 364th Judicial District Court of Lubbock County, Texas.

Family Code § 263.201, to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit.

• The June 5, 2008, Status Hearing Order (Exhibit F, p. 3) specifically states: "IT IS ORDERED that, except as specifically modified by this order, the permanency plans and recommendations for the children, set out in the service plans filed with the Court, are approved and adopted by the Court as if set out verbatim in this order."

• The Family Service Plan adopted by the Court (Exhibit G, p. 3) specifically states: "Mr. Ottwell will send any/all correspondence to his children Victoria and Kaleb through caseworker Tisdale at the CPS office located at #7 Briercroft Office Park, Lubbock, Texas 79412.  Mr. Ottwell understands that all letters, photos, and other correspondence must be monitored and approved by the Department for safety reasons (i.e read and approved prior to being given to the child)."

• The Family Service Plan (Exhibit G, p. 7) specifically states, under Parent-Child Contact and Financial Support: "**Stipulations** (Specify all court-ordered stipulations and any additional CPS restrictions, including supervision requirements.)  It is policy that no child visit a parent in prison or drug rehab due to the inappropriate setting; all mail must go through case worker at #7 Briercroft Office Park, Lubbock, Texas 79412.  Worker will supply Mr. Ottwell with paper and paid-postage envelopes in order to write his children (emphasis added)."

• The Family Service Plan (Exhibit G, p.5) specifically identifies the caseworker, Tara R. Tisdale, as the contact person "for information about the Family Service Plan or your child(ren)."

In spite of the above, respondent argues that "nothing in documents Ottwell provides the Court contains such a directive" permitting him to contact the minor victims of his present offense through a third party.  (Doc.# 13, p. 11).  Respondent further argues that Ottwell "apparently contends that the state court's order that limited his parental rights--and specifically outlined the 'service plans' and procedures necessary for him [sic] reacquire those parental rights – placed a specific burden upon TDCJ to ignore its own regulation, and to permit him to contact the minor victims of his present offense through a third party.  Stated differently, the service plan plainly outlined what was minimally necessary for Ottwell to re-obtain his parental rights, and

did not direct TDCJ to violate its own directives in support of such an effort." *Id.* at 11. Respondent also refers to the letter from the Department, dated December 15, 2008 (Doc. # 2, Exh. J), informing Ottwell that he is prohibited from contacting his children, in any manner, due to his conviction of injury of a child.

Contrary to respondent's contention, the documentation provided by Ottwell does not appear to be an order in response to an attempt by Ottwell to reacquire his parental rights. Ottwell was in the early years of his prison sentence when the orders were effected. Nowhere in documentation provided by Ottwell or the respondent is it stated, or does Ottwell state, that he was attempting to reacquire parental rights. The state court orders address the concerns of the Department about the health, safety and welfare of the children in their then present home environment in 2008, living with the mother and the "presumed father Christopher Trevino." Ottwell has presented clear evidence that he wrote letters to his children following every instruction dictated by the state court and included in the Department's service plan. He addressed the letters to the proper person and mailed the letters to the proper address. Although respondent argues that a TDCJ administrative directive forbade this action, respondent did not include a copy of the administrative directive for the record and the Court has no idea what it states. Instead, respondent referred the court to the directive via footnote and a very long string web, which does not lead to the directive. Respondent also failed to explain how the TDCJ administrative directive supercedes a state court order. With respect to the letter from the Department prohibiting Ottwell from communicating with his children, in any manner -- relied upon by respondent in their summary judgment motion -- the letter was not written until *after* the disciplinary proceedings made the basis of this suit had occurred. The letter completely contradicts the Departments previous instructions in evidence (referenced above in the state court

order) as to the manner in which Ottwell *could* contact his children, yet respondent fails to clarify this contradiction or even acknowledge that the court order exists.

This Court is of the opinion that Ottwell has shown, with "significant probative evidence," that there exists a genuine issue of material fact. An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002). For these reasons, respondent's motion for summary judgment is **DENIED**.

Before a district court may enter summary judgment *sua sponte*, the losing party must be provided with adequate notice of both the grounds the court will consider and a time for presentation of argument and evidence opposing the summary judgment. *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 435 (5th Cir. 2000). Accordingly, respondent shall have thirty (30) days from the date of this order to file a response. If respondent does not file a response, the Court will, *sua sponte*, grant summary judgment in favor of Ottwell and grant his request for federal habeas relief.

SIGNED at Houston, Texas this 10th day of May, 2010.

Kenneth M. Hoyt
United States District Judge